## THE JANESVILLE BRIDGE Co. vs. STOUGHTON and others.

1 p 667
59 LRA 554n

1. FERRY FRANCHISE. Where a party obtained a grant of a ferry franchise, and in consequence of the increase of travel, concluded to abandon his right, provided a charter should be granted to himself and others creating a corporation for the purpose of constructing and maintaining a bridge at the same place, and such charter was granted and the bridge was erected, whereby his ferry franchise became of no value, and he subsequently became the owner of all the stock in such corporation. *Held*, that he could not claim any benefits or powers beyond those conferred by the charter of the bridge company, by virtue of his former ownership of the ferry franchise.

2. POWER OF CORPORATIONS. A corporation is a mere creature of the act to which it owes its existence and derives all its powers from it, and

668    SUPREME COURT OF WISCONSIN,

The Janesville Bridge Co. vs. Stoughton et al.

has only such powers, rights and privileges as the act of incorporation confers.

3. CORPORATE POWERS STRICTLY CONSTRUED. Grants of corporate powers or privileges are strictly construed, and nothing will be held to pass by implication.

4. BRIDGE CHARTER—WHETHER IT CONFERRED AN EXCLUSIVE RIGHT— INJUNCTION. An act was passed incorporating a bridge company, with permission to construct and maintain a bridge at a certain point across a river, with the right to exact and receive tolls of such persons as might pass over it. *Held,* that the act did not grant *an exclusive right* to construct and maintain a bridge across such river at that place, but that another company might be legally incorporated, with power to build and maintain another bridge, which would not obstruct or embarrass the passage over the first bridge, though the construction and maintenance of such new bridge might diminish the tolls and profits of the original bridge company; and that it could not on that ground maintain a bill to prevent the erection and maintenance of the new bridge. IRVIN, J., *dissenting.*

5. INJUNCTION—WHEN GRANTED. To entitle a party to an injunction, there must be such an injury threatened or apprehended as from its nature, is not susceptible of being adequately compensated by damages at law, and it must be a case of strong equity and imperious necessity.

6. INJUNCTION. For a mere or uncertain diminution of the value of complainant's property, a court of chancery will not grant an injunction or abate a nuisance.

APPEAL from the District Court for *Rock* County.

*The Janesville Bridge Company* filed its bill against *Luke Stoughton, Guy Stoughton, Asa Blood, James M. Burgess, George Brown,* and *I. N. Wagoner,* setting forth that in 1838, one Henry F. Janes obtained from the legislative assembly of the Territory a grant of a franchise to keep a ferry across Rock river, at Janesville, and in pursuance thereof, kept said ferry in operation, taking tolls for the same ; that in the fall of 1838, Charles Stevens, of Janesville, purchased of said Janes the said ferry right and boat, etc., for $150, and kept said ferry, and purchased expensive apparatus therefor ; that owing to the great increase of business at Janesville, said right became valuable ; that in the year 1841, said Stevens offered to relinquish said franchise, provided he could obtain from the legislative assembly a charter to build a bridge and take tolls, etc.; that said Stevens and others

applied to and obtained from the legislature an act to incorporate the Janesville Bridge Company, the complainant, which act had not been amended or repealed; that the county of Rock had not purchased its bridge, and that all the persons or corporators named in the first section of the act, eight in number, except said Stevens and W. H. H. Bailey, declined to take stock in the company; that Stevens and Bailey and one Lappin opened books for subscription, according to the act, and subscribed in all twenty-five shares, and that no other person subscribed thereto; that the subscribers became thereby empowered to erect and maintain a bridge at Janesville, across Rock river, until the year 1865, subject to the right of Rock county to purchase the same; that in 1842, complainants commenced said bridge, within one year from the passage of said act, and completed it within the time and in the manner required by the act, whereby they became entitled to take tolls, etc.; that some time in 1843, Stevens purchased of Bailey and Lappin all their stock in said company, and became sole owner; and by the construction of the bridge, said ferry franchise became of no value. The bill charges that the defendants, without permission of the legislature, or any authority whatever, have been collecting materials to erect a bridge across Rock river, and have commenced to build the same at Janesville, within sixty rods of complainant's bridge; that they are employing workmen and collecting materials, etc., with the intention of permitting persons, etc., to cross the same, to the great injury of complainant and its rights, and to the destruction of its franchise; that Rock river has been meandered and returned as navigable by the United States surveyors; and that complainant's bridge is ample and sufficient to accommodate the public, etc.

The bill prayed an injunction, which was ordered. To this bill the defendants interposed a general demurrer, and after argument, the district court overruled it, and decreed a perpetual injunction against the defendants,

restraining them from building their projected bridge, and from this decree they appealed.

*A. Hyatt Smith*, for appellants.

*Edward V. Whiton*, for appellee.

MILLER, J.    *The Janesville Bridge Company* filed its bill on the chancery side of the district court for the county of Rock, in which it complains, that Charles Stevens purchased a ferry right across Rock river at Janesville ; and in consequence of the increase of travel, he concluded to abandon his right, provided a charter incorporating a company for the construction of a bridge across the river at the same place could be obtained from the legislature.    That an act was passed by the legislature, incorporating the said Charles Stevens and seven other persons by name, and such others as might associate with them ; by the name and style of The Janesville Bridge Company.    A copy of said act is inserted in the bill ; and it authorizes the company to construct the bridge across the river ; to create and receive subscriptions for stock, and to take certain tolls therein mentioned.    It is also set forth, that all the said persons refused to accept the charter, or take stock, but the said Charles Stevens and another, who with another person, subscribed for all the stock and constructed the bridge. That the said river had been meandered by the United States surveyor ; and that the said defendants, without obtaining permission from the legislature of the Territory, and without any authority whatever, have been collecting materials to be used in constructing a bridge across said river ; and have actually commenced the construction of the said bridge at Janesville, and within sixty rods of the bridge of complainants.    And that the said defendants are constructing said bridge with the intention of permitting persons with their horses and teams to cross on the same, when it shall be completed, to the great injury of the rights and property of complainants, and to the entire destruction of their franchise.    And that the bridge of

complainants is sufficient to pass all the traveling public across said river at Janesville. And an injunction was prayed.

To this bill the defendants filed their demurrer, which after argument, was overruled by the court, and for want of an answer, a perpetual injunction was decreed against the defendants. From this decree the defendants appealed to this court.

It not being necessary to determine whether this *Janesville Bridge Company*, from its own showing in the bill, was legally constituted and now exists as a legal corporation, or not, the court will not investigate or decide the question.* Nor need we at this time determine the propriety or constitutionality of the act declaring rivers navigable for certain purposes, approved February 9, 1841, by which all rivers and streams of water in the Territory, in all places where the same have been meandered and returned navigable by the surveyors employed by the United States government, are declared navigable to such an extent, that no dam, bridge, or other obstruction may be made in or over the same without permission of the legislature.

It is not the province of a court of chancery to punish the defendants for the alleged attempted violation of the foregoing statute. At all events, this bill and this suit cannot reach them for an attempted infraction of this law.

Charles Stevens, one of the alleged corporators, cannot claim any privileges, benefits or powers beyond the charter or act of incorporation, by virtue of his former ownership of the ferry right. He voluntarily surrendered it, upon the enactment and acceptance of the charter, and the construction of the bridge. There is no rule of legal construction which could authorize the court to connect these rights, or that should induce the court to construe the act of incorporation, or determine this suit more favorably to Stevens, on account of his former interest in, and surrender of his ferry right. His

---

* Ferrall v. Woodward, 20 Wis. 458.

surrender of that right was his own voluntary act for a supposed benefit.

In its corporate capacity, a corporation is a mere creature of the act to which it owes its existence. It may correctly be said to be precisely what the incorporating act has made it; to derive all its powers from that act; and to be capable of exerting its faculties only in the manner the act authorizes. Decisions of the supreme court of the United States adhere to the principle, that public grants, such as corporation charters, are to be construed strictly, and are in this respect perfectly consistent. Nothing passes by implication in grants by the public. *Amery v. The Providence Ins. Co.*, 2 Cranch, 127; *The Providence Bank v. Billings and Pittman*, 4 Pet. 514; *Jackson v. Lamphire*, 3 id. 289; *Beaty v. The Lessee of Knowles*, 4 id. 165; *Fleckner v. The Bank of U. S.*, 8 Wheat. 338; *Charles River Bridge v. Warren Bridge*, 11 Pet. 420.

The act incorporating the *Janesville Bridge Company*, granted to the company permission to construct a bridge, and the right to exact and receive tolls of such persons as might pass thereon. It did not grant an exclusive right to construct a bridge across that river, even at Janesville. The provisions above mentioned embrace the whole grant. The company is not vested with any exclusive privileges over the waters of Rock river above or below the bridge; nor does the charter secure to the company the whole travel at that point. The company is only authorized to exact tolls of such persons as may choose to use the bridge. The legislature did not even pretend to raise an inference or presumption, that this should be the only bridge in that vicinity. Another company may be legally incorporated for the purpose of constructing a bridge; or these defendants may hereafter be authorized by law to construct a bridge at the place where it is alleged they were at work. *Charles River Bridge v. Warren Bridge*, 11 Pet. 420, is a case conclusive upon this point.

The bridge about to be constructed will not, from its

distance and location, affect the use of complainant's bridge by obstructing the way to it, or interrupting the passage over it ; nor is the franchise of the complainant in any way affected by the construction intended or complained of. The right of the company to take tolls remains the same, whether a second bridge is erected or not. The reduction of the receipt of tolls is the only ground of complaint. As there is no stipulation on this point in the grant, nor none to be inferred from its terms, it is to be considered whether this is a sufficient consideration to call for the exercise of chancery jurisdiction in behalf of this company. To entitle a party to an injunction or to the exercise of chancery powers, it is well settled, that there must be such an injury, as from its nature is not susceptible of being adequately compensated by damages at law. 2 Story's Eq., § 204. It must be a case of strong equity and imperious necessity. There must be something peculiar in the case, so as to bring the injury under the head of quieting possession, or to make out a case of irreparable mischief. The complainant must have a vested right, either legal or equitable, which may be greatly, if not irreparably, affected by the act sought to be restrained. 6 Johns. Ch. 46. For a mere or uncertain diminution of the value of the property of complainant, a court of chancery will not award an injunction, or abate a nuisance. 2 Story's Eq., § 204 ; 16 Vesey, 342 ; 1 Dickens, 164. Now, having shown conclusively, that this company was not possessed of an exclusive right to all the travel, or to all the tolls of all persons who may cross that river at that point in any manner, they cannot claim to be possessed of such a vested right, in law or equity, to all such tolls, as to entitle them to relief in this court for an alleged reduction of the tolls or income. It is a mere diminution of the value of property, for which this court will neither award an injunction or abate a nuisance. Suppose we had a law prohibiting all private banking ; that the legislature should incorporate a banking company, which had com-

menced business, and had all the business and custom of the country, there is nothing to prevent another incorporation of a similar character, nor would the court allow an injunction against the second bank at the instance of the first company, on the allegation that it was drawing, and likely to draw off, its custom and business. And suppose that a company should commence business without a charter and in direct violation of the prohibitory statute, and should draw from the incorporated company its customers, and greatly reduce its business and profits, these certainly would not present such cases of irreparable mischief, or deprivation of vested rights, as to entitle the first company to relief in a court of chancery; they would be cases of mere diminution of the value of property; mere reduction of income, for which a court of chancery will not grant relief. For the violation of the public prohibitory statute, the persons injured would be required to resort to their legal remedies.

For these reasons it is the opinion of the court that the decree of the district court should be reversed, and that the said district court be directed to dismiss the complainant's bill and dissolve the injunction.

Ordered accordingly.

IRVIN, J., *dissenting*.