BATZEL and another, Respondents, vs. FARMERS MUTUAL FIRE INSURANCE COMPANY OF SPARTA, Appellant.

*February 5—March 3, 1936.*

For the appellant there was a brief by *Masters & Hansen* of Sparta, and oral argument by *L. A. Hansen.*

For the respondents the cause was submitted on the brief of *Gleiss & Goodman* of Sparta.

WICKHEM, J. Plaintiffs are retired farmers residing in the city of Sparta. Defendant is a nonregistered town mutual insurance company organized under ch. 202, Stats. Plaintiffs own a farm in the township of Angelo. On

December 28, 1931, defendant issued a policy of fire insurance upon the farm buildings on this farm; the amount of such insurance applicable to the dwelling house being $2,200. In November, 1932, plaintiff leased all of the farm lands to one Leverich. The farmhouse was separately leased to one O. C. Loomis on a month to month basis. This lease carried something more than an acre of land in the immediate vicinity of the house. Loomis made some slight alterations to accommodate the house to use as a tavern. Up to the time of the fire, he and his family used the remainder of the house as a dwelling. He secured a tavern license, and the building was actually in use as a tavern on January 24, 1934, when fire totally destroyed it. Plaintiffs knew of the use of the building as a tavern, and in reporting its loss referred to it as a dwelling house and not as a tavern.

On November 28, 1933, defendant levied an assessment on plaintiffs' policy, and this assessment was paid. Just prior to this, on November 4th, the secretary of defendant company asked one of the plaintiffs if Loomis was still living in the house, and also said that defendant did not like to insure taverns, "but there is nothing in the by-laws about it so I guess we have to." On January 25th, following the report by plaintiffs of the fire, three of the directors of defendant met at the farm and agreed that the house was a complete loss. The secretary of the company said at that time that there was no question as to their obligation to pay the loss. There is evidence from which the court could conclude that the officers and directors of the company, prior to the time of the fire, knew that the building on plaintiffs' farm was used for tavern purposes. Other farm dwellings used for the same purpose were insured by defendant company at the time of the fire with knowledge on the part of the directors as to the uses to which these properties were being put. On February 2, 1934, the directors of the defendant company voted to cancel all insurance on dwelling houses, parts of which were used for taverns. On May 5,

1934, the directors of the defendant voted to pay plaintiffs' loss, and levied an assessment for that purpose. Plaintiffs were assessed a premium of $11.40, and paid the same. On or about June 21, 1934, defendant paid to plaintiffs the sum of $700 to apply on the loss of $2,200. On August 27, 1934, defendant's board of directors enacted a resolution that plaintiffs' claim be paid only after a court decision determining the validity of the policy or coverage. On November 1, 1934, defendant levied an assessment on all its members, including the plaintiffs. This assessment was based on plaintiffs' policy, and the plaintiffs paid this assessment.

In summary, the facts, either undisputed or established by sufficient evidence to sustain the findings, show that the dwelling house on plaintiffs' farm, which clearly was a farm building at the time of the issuance of the five-year policy, was separated from the farm and was leased as a residence to one who did no farming and who used it in part as a tavern.

It is the first contention of defendant that the policy was voided by the change in use of this dwelling house. Reliance is had in the first place upon the statutes applicable to defendant company, particularly to sec. 202.06 (2), Stats. 1931, which reads as follows:

"They shall not insure any property other than detached dwellings and outbuildings used in connection therewith and their contents; farm buildings and their contents; live stock in possession or running at large; farm products on premises and farming tools, implements, machinery and vehicles, but if authorized by an annual meeting they may insure in an amount not exceeding ten thousand dollars on any single risk, country stores, schoolhouses, town and society halls, churches, country hotels, water mills, blacksmith shops, cheese factories, creameries, and the contents of any such buildings and buildings of agricultural societies."

Sub. (2) was amended by ch. 126, Laws of 1935, to permit town mutuals, if authorized by an annual meeting, to insure, in the amount not to exceed $10,000 on any single

risk, country taverns, with a proviso that in any insurance on specifically rated risks in incorporated villages or cities, the rate shall be filed with the insurance department and rating bureau and be audited by a rating bureau.

It is contended by defendant that the insurance of taverns was not merely *ultra vires* defendant company but prohibited by statute; that any insurance purporting to cover a tavern would be entirely void; and that the conversion of a farm dwelling into a tavern would immediately avoid an initially valid policy.

We see no escape from this contention, in view of the decision in *Luthe v. Farmers' Mut. Fire Ins. Co. of Ripon,* 55 Wis. 543, 13 N. W. 490. There the policy was written on a building as a dwelling, and the building thereafter converted into and used as a schoolhouse. This court said:

". . . The prohibition of town insurance companies by sec. 10, ch. 103, Laws of 1872, and sec. 1931, R. S., from insuring buildings of this character without a majority vote of its members, is clear and explicit. It is not contended that if the policy had been written upon a schoolhouse it would have been valid, nor, as we understand the brief of the respondent's counsel, that if the dwelling insured had been converted into a schoolhouse proper that the policy would not thereby have become void. A policy of this company without such vote cannot lie and subsist on a schoolhouse. That a policy of insurance on a dwelling, which was afterwards, during the life of the policy, converted into a schoolhouse, would thereby become void, is clearly within the reason of the legislative prohibition. Such a prohibited policy is *ultra vires,* and becomes so whenever the building falls clearly within the prohibited class of buildings which are not allowed by law to be insured by such a company, whether at the date of the policy or afterwards. The doctrine of consent and waiver is not applicable to such a case, because the law makes the restriction of power, and not a mere regulation of the company. *Janesville Bridge Co. v. Stoughton,* 1 Pin. 667; *Madison, W. & M. P. R. Co. v. Watertown & P. P. R. Co.* 7 Wis. * 59; *Rock River Bank*

*v. Sherwood,* 10 Wis. * 230; *Clark v. Farrington,* 11 Wis.
*306; *Northwestern Union Packet Co. v. Shaw,* 37 Wis.
655. . . ."

There may be some doubt as to whether it is properly held
that the policy is avoided by such a change in use. It would
seem to be more accurate to say that the policy simply ceases
to cover a building, the uses of which have·so changed that
a new policy could not validly be issued upon it. However,
this question would only be important if recovery were
sought upon other buildings described in the policy, and it
was urged that the entire policy was void as the result of
the change of use. Hence, it is not necessary to determine
this question here.

The only remaining question is whether the use of the
property in part as a dwelling is enough to avoid the con-
clusion that the building is properly considered to be a
tavern. Upon this question, the court is of the view that
the maintenance of a licensed tavern on the premises as well
as the making of alterations, inconsequential though they
may have been, for the purpose of adapting the property to
use as a tavern, is sufficient to bring the facts within the doc-
trine of the *Luthe Case.* The purpose of the statute is to
prohibit insurance companies of this type from carrying the
more hazardous types of risk, and the foregoing conclusions
are inevitable if the statute is not to be emasculated and its
purposes defeated.

There is no assignment of error based on the denial of
defendant's counterclaim for the $700 paid upon this loss,
nor is the matter argued in defendant's brief. We, there-
fore, confine ourselves to the determination heretofore made
that plaintiffs are not entitled to recover the balance of the
policy.

*By the Court.*—Judgment reversed, and cause remanded
with directions to dismiss plaintiffs' complaint.