directions to grant the relief asked, upon the plaintiff's paying the general tax for the year 1871.

*By the Court.* — It is so ordered.

37  655
82  191

THE NORTHWESTERN UNION PACKET COMPANY VS. SHAW.

CORPORATIONS. (1, 2, 3) *Organized only as common carriers, contracts of, when* ultra vires. (4) *Money paid by, on executory contract* ultra vires *recoverable, but action for damages for breach will not lie.*

AMENDMENT. (5) *Allowed to change action for damages on contract to one for money had and received.*

1. The articles of association of the plaintiff (an Iowa corporation) contemplate only the business of a common carrier of persons and property, and not those of a dealer in grain or other produce.

2. As a common carrier, plaintiff may make all contracts necessary (perhaps all that are convenient) to the carrying on of that business. And *possibly* it might lawfully purchase grain for storage and shipment for the purpose of keeping its warehouses and boats employed when they would otherwise be unemployed.

3. But in an action on a contract for the sale to said company of a large quantity of wheat, in the absence of anything in the pleadings or proofs to show the existence of any such special purpose or contingency, the court holds the contract to be *ultra vires*, and that no damages for breach of it can be recovered by either party.

4. Where money has been paid upon an executory agreement free from moral turpitude and not prohibited by positive law, but invalid by reason of the legal incapacity of a party thereto (otherwise capable of contracting) to enter into that particular agreement, or for want of a compliance with some formal requirement of the law (as that the contract shall be in writing, or the like), the money so paid may be recovered (while the agreement remains executory) in an action for money had and received.

5. Although the present action is upon the contract, for damages, yet, as the complaint states all the facts necessary to entitle plaintiff to recover the money so paid by it to defendant, except the fact that the contract was void, and as that fact was insisted upon by defendant throughout the trial, plaintiff should be allowed to amend its complaint and to recover said money *in this action.*

APPEAL from the Circuit Court for *La Crosse* County.

The complaint alleges that the plaintiff is, and since May 1, 1870, and before, has been, a corporation created and organized pursuant to the laws of the state of Iowa, and is, and ever since its organization has been, engaged in the business of a common carrier on the Mississippi river and its tributaries, and also in the business of purchasing, selling and dealing in wheat and other kinds of grain and produce; that at Lansing, in the state of Iowa, in June, 1870, the plaintiff, by its duly authorized agent, entered into a contract with the defendant to purchase of the latter 4,000 bushels of wheat, to be delivered from the mill of the defendant at that place into the barge of the plaintiff, immediately, and paid the defendant $1,000 on account of such purchase; and that the plaintiff furnished a suitable barge for said wheat on the day the contract was made; but that the defendant, although requested to do so, failed to deliver the wheat to the plaintiff, or to repay the $1,000 so advanced to him. The complaint also contains averments that the plaintiff detained the barge thus furnished for several days, and that the market price of wheat advanced immediately after the contract was made. Judgment is demanded for, 1. The $1,000 paid on account of the contract; 2. A specific sum as damages for the breach of the contract by the defendant; and 3. A specific sum for the value of the use of the barge while so detained.

The defendant admits in his answer the making of a contract with the plaintiff to sell and deliver to it 4,000 bushels of wheat, the payment by the plaintiff of $1,000 on the contract, and the nondelivery of the wheat. The answer also contains allegations to the effect that it was the fault of the plaintiff that the wheat was not delivered, and a counterclaim for damages suffered by the defendant by reason of the failure of the plaintiff to perform the contract on its part.

On the trial of the action, the circuit judge held that the plaintiff had no power to make the contract stated in the

pleadings; and the jury, under the direction of the judge, found. for the defendant. A motion for a new trial was denied, and judgment for the defendant entered pursuant to the verdict; from which judgment the plaintiff has appealed.

*Cameron & Losey*, for appellant, argued, that. admitting that the contract was void, the company could recover back the money paid upon it. Chitty on Con., 367; *Brown v. Timmany*, 20 Ohio, 81; *Roll v. Raguet*, 4 id., 400; *Greenman v. Curtis*, 6 Mass., 381; *Sampson v. Shaw*, 101 id., 145; *McKee v. Manice*, 11 Cush., 357; Roscoe on Ev., 232. The defendant, being a party to the contract, and having received its benefits, is estopped from denying the power of the company to make. it. *Glass Co. v. Dewey*, 16 Mass., 94; *Welland Canal Co. v. Hathaway*, 8 Wend., 480; *Burns v. R. R. Co.*, 9 Wis., 450. The defendant is precluded from setting up such defense. *Farmers & Millers' Bank v. The Railroad Co.*, 17 id., 372; *Bissell v. R. R. Co.*, 22 N. Y., 258; *Parish v. Wheeler*, id., 494; *Bank v. North*, 4 Johns. Ch., 370; *Navigation Co. v. Weed*, 17 Barb., 378; *State of Indiana v. Woram*, 6 Hill, 37; *Steamboat Co. v. McCutcheon*, 13 Pa., 13; *Palmer v. Lawrence*, 3 Sandf., 170; *Potter v. Bank*, 5 Hill, 490; *Suydam v. Banking Co.*, id., 491; *Bank v. Bank*, 11 Barb., 213. This case is distinguished from *Madison Plankroad Co. v. Watertown Plankroad Co.*, 7 Wis., 59. That suit was brought to enforce the executory contract which was held void. Here the suit is to recover money paid on a contract claimed to be *ultra vires*.

*Wing & Prentiss*, for respondent, to the point that the contract was *ultra vires*, cited *Perrine v. Canal Co.*, 9 How. (U. S.),· 172; *M. Plankroad Co. v. W. Plankroad Co.*, 7 Wis., 59; *Rock River Bank v. Sherwood*, 10 id., 230; *Janesville Bridge Co. v. Stoughton*, 1 Pin., 667; Angell & Ames on Corp., §§ 111, 256. They further argued upon the evidence tending to support the counterclaim, and readiness of defendant to perform on his part, that, conceding the contract to be valid, the plaintiff could· not recover.

LYON, J.    The articles of incorporation of the plaintiff were read in evidence on the trial of the cause, and it appears therefrom that the plaintiff was organized under and by virtue of chapter 52 of the revision of 1860 of the laws of Iowa, entitled " Corporations for pecuniary benefit."    The statute was not put in evidence, and we cannot take judicial notice of its provisions. The articles set forth the purposes for which the plaintiff was organized, as follows :

" It is agreed, *first*, that the name of the corporation shall be the ' Northwestern Union Packet Company,' and that the general nature of the business shall be, to purchase, charter, buy, build, own and control vessels to be propelled in whole or in part by steam or otherwise, for the purpose of using them in transportation of persons and property on the Mississippi river and its tributaries : to erect, purchase, lease, maintain and own docks, wharves, warehouses and any and all kinds of buildings, structures or fixtures necessary and useful for carrying on the business of navigation, freighting, forwarding, storing or transporting property or persons, or for the purpose of building, rebuilding or repairing vessels of any and every kind.    And it is agreed, further, that the corporation shall have power to lease, transfer, assign, convey and sell any and all of its vessels, steamboats, barges, wharves, warehouses, docks and all of its property of every description, and to do any and all acts and things which may be necessary to an economical and successful prosecution of their said business; and, amongst other powers not hereinbefore enumerated, it is agreed that it shall have power to borrow money in its corporate capacity and name, and in such capacity to make, execute and deliver to any person or persons, or body corporate or politic, any and all writings, notes, bonds, mortgages on real estate or personal property, or other security of whatsoever name or kind ; to enter into any arrangement, agreement or contract with any person or persons, association, copartnership or corporation, in reference to the storing, forwarding or freighting of any kind of property, by

this corporation, or to any and all business incidental to or arising from the transportation of persons and property."

No other or further purpose of the organization is stated in the articles, and no other or different business than is mentioned in the foregoing extract is authorized therein.

In determining the legal functions of the plaintiff, the terms of the articles of incorporation must necessarily control; and unless these specify or by necessary implication include the buying of grain, the contract stated in the pleadings is *ultra vires* on the part of the plaintiff.

It seems very clear that the articles contemplate that the business of the plaintiff should be confined to that of a common carrier of persons and property. Of course, as a common carrier, the plaintiff has power to make all contracts necessary, perhaps convenient, to the carrying on of that business. Possibly it might lawfully purchase grain and other produce for storage and shipment, for the purpose of keeping its warehouses and boats employed, which but for such purchase would have been unemployed; although such power, even under such circumstances, may well be doubted. But there is nothing in the pleadings or testimony tending to show that the contract under consideration was made for any such purpose, or that any such contingency had arisen. Hence the question to be determined is, whether the plaintiff can lawfully buy and sell the produce of the country in the same manner and to the same extent that a natural person may.

We think this question must be answered in the negative. There is no necessary connection between the business of a common carrier and that of buying and selling the commodities which the carrier transports. Neither is the latter business necessarily or usually dependent upon the former. The two are as essentially distinct as the business of the carrier and that of the producer. It will scarcely be claimed that the plaintiff is authorized, under its articles of incorporation, to purchase large tracts of land on which to raise grain and other produce

to be stored in its warehouses and shipped over its lines. If it may not do this, it is not perceived on what principle it may purchase the commodities instead of raising them. We think the principle is the same in both cases. Moreover, in view of the fact that the transportation of the products of the country is mainly controlled by powerful corporations, representing immense aggregations of capital, there are reasons, if not of public policy, certainly reasons which should have much weight with the legislature, for confining common carriers to their legitimate business as carriers. At least no forced construction of their charters should be sanctioned to enable them to become producers or purchasers of such products. By confining them to the proper business of common carriers, the temptation to make unjust discriminations in the transportation of their own property, to the manifest injury and oppression of persons having like property for transportation, can only be avoided. Hence, while it is conceded that the legislature may confer upon a corporation common carrier the right of a natural person to buy and sell the commodities which it transports, it must be held that until so conferred the right does not exist.

We conclude that the contract set forth in the pleadings, as to the plaintiff, is *ultra vires*, and that no claim for damages resulting from a breach thereof can be successfully asserted by either party. This disposes of the counterclaim of the defendant, and of all claims of the plaintiff except the claim to recover the $1,000 paid on account of the attempted purchase of the wheat.

But the question remains whether the plaintiff is entitled to recover the $1,000. If it can recover it, no good reason is perceived why it may not do so in this action. The complaint states all the facts essential to be averred in an action to recover the same, except that the plaintiff had no power to make the contract, and that omission may be supplied by amendment. Such an amendment cannot prejudice the defendant, for, in

the progress of the case thus far, he has constantly asserted such want of power as a defense.

An extended discussion of the question will not be profitable. There are many adjudications in this country and in England, bearing upon it, some of which are cited in the brief of counsel for the plaintiff. The cases have been carefully examined, and we think the rule may fairly be deduced from them, that when money has been paid upon an executory agreement, which is free from moral turpitude, and is not prohibited by positive law, but which is invalid by reason of the legal incapacity of a party thereto, otherwise capable of contracting, to enter into that particular agreement, or for want of compliance with some formal requirement of the law (as that the contract shall be in writing, and the like), the money so paid may, while the agreement remains executory, be recovered back by the party paying it, in an action for money had and received.

Many of the cases go farther, and sustain the action when some of the foregoing conditions are wanting. But the exigencies of this case do not require us to determine how far the rule may be extended, or what conditions may be omitted therefrom without defeating the action. The rule is here stated most favorably for the defendant; and yet it is clear that under it the plaintiff may maintain an action to recover the money paid on the invalid agreement. A contract to buy wheat is an innocent one; no statute has prohibited it; and this particular agreement is invalid only because of the accident, that the purchaser is a corporation instead of a natural person, and happens to lack authority to make this particular contract.

In addition to the cases on this subject cited by counsel, the following will be found to sustain the views above expressed : *Bagott v. Orr*, 2 Bos. & Pul., 472; *Lowry v. Bourdieu*, Doug., 468; *Aubert v. Walsh*, 3 Taunt., 277; *Busk v. Walsh*, 4 id., 290. In *Thomas v. Sowards*, 25 Wis., 631, the rule above

stated was applied.   See also *Brandeis v. Neustadtl,* 13 id., 142. But it is argued by the learned counsel. for the defendant, that the case of *The M., W. & M. P. R. Co. v. The W. & P. P. R. Co.,* 7 Wis., 59, is an authority fatal to the plaintiff's right to recover.   That was a mortgage given to secure the per-formance of an agreement which the court held to be *ultra vires.*   It was, as Chief Justice WHITON said in the opinion, an action founded on the agreement and on it alone.   The contract failing, the action failed as a matter of course.   In strict 'obedience to the authority of that decision, we hold in this case, that so far as the action is founded on the void agreement, it cannot be maintained.   Had that been simply an action to recover the amount  paid by the plaintiff for the use of the defendant, it might have been decided differently.   But it was not such an action, and the court did not determine whether such an action could be maintained.   The case is not, therefore, an authority against the plaintiff's right to recover his advances on account of the void executory agreement.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.

A motion for rehearing was denied.