# WHEELING.

PARKER v. U. S. BUILDING, LAND & LOAN ASSOCIATION *et al.*

Submitted June 7, 1880.   Decided May 6, 1882.

1. The 25th section of chapter 54, page 411 of the Code of West Virginia provides, that "homestead and building associations formed under this chapter may be for the purpose of raising money to be used among the members of such corporations in buying lots or houses or in building or

repairing houses." And the 29th section provides, that "every such corporation shall adopt a constitution, which shall be signed by the members thereof, and which shall embrace among other things this 25th section." A charter is granted regularly to an association as a homestead and building association under this chapter of the Code ; but the 1st article in its constitution provides : "This association shall be called the United States Building, Land & Loan Association of Wheeling; and its object shall be to purchase real estate with or without improvements and for the accumulation of a fund, by which the members shall be enabled to build or purchase houses and *secure loans.*" Another article provides : "This association is formed under and is subject to the corporation-laws of the State of West Virginia especially sections 25, 26, 27 and 28 of chapter 54 of the Code of West Virginia, which are hereby made a part of this constitution." HELD :

I. Such corporation is a homestead and building association and has a right to enforce the performance of a contract with it, if such contract is of such a description, that it could be legally made and enforced by any other homestead and building association.  (p. 755.)

II. Held further :  The failure of a member to sign the constitution of such association, if he has for a long time acted as a member of the association, will not prevent the association from enforcing the performance of a contract made with such member, though it be a contract, which the association was not authorized to make with any but a member.  (p. 768.)

2. The 27th section of chapter 54 of the Code of West Virginia provides, that "every homestead and building association is authorized to levy, assess and collect from its members such sums of money by stated dues, fines, interest on loans advanced and premiums bid by members for the right of precedence in taking loans, as the corporation by its laws shall provide, provided that the dues, fines and premiums paid by the members of such corporation, although paid in addition to the legal rates of interest on loans taken by them, shall not be construed to make the loans so taken usurious." HELD :

Under this section such a corporation has no right to impose a fine for the non-payment of interest on money loaned to a member.  (p. 763.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ohio rendered on the 1st day of March, 1879, in a suit in chancery in said court then pending, wherein John E. Parker was plaintiff, and the United States Building, Land & Loan Association and W. H. Caldwell were defendants, allowed upon the petition of said Parker.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the decree appealed from.

94

GREEN, JUDGE, furnishes the following statement of the case :

John E. Parker in January, 1878, filed his bill in the county court of Ohio, in which he alleged, that he owned certain real estate in the city of Wheeling particularly described ; that on August 2, 1876, he executed a deed of trust to the defendant, W. H. Caldwell, trustee, conveying said real estate to secure a loan therein recited to be the sum of $900.00 and certain interest, fines and dues on certain shares of stock held by him in the United States Building, Land & Loan Association of Wheeling, West Virginia, which was duly recorded, and a copy of which was filed with the bill ; that the trustee had advertised in the manner prescribed by the deed of trust for sale said property and would sell the same on January 19, 1878. He says he entered into an arrangement with said building association, by which he was to have this loan upon his executing this deed of trust, and he was to pay weekly certain sums of money to said building association in discharge of said loan ; that he has paid from time to time on this loan about $226.50. He says, that he never signed the constitution and never did become a member of the association. He says, that the money was loaned at usurious interest and in violation of the constitution and by-laws of the association; and he charges, that the secretary and certain members of the association confederated together to defraud him and to compel him to pay by by-bidding on their part unknown to him large premiums for the money so loaned. He says, that though he gave his note for $900.00, yet he received but $624.75. He asks, that the trustee, W. H. Caldwell, and the United States Building, Land & Loan Association, the defendants, be enjoined from proceeding to sell his said real estate, and that the building association be required to render an account of the sums paid on said loan and discover on oath what usurious interest has been paid on said loan, and that it be applied to the payment of the principal, and for further relief. This bill was sworn to and injunction awarded as prayed for by the judge of the county court of Ohio county in vacation the penalty of the bond being fixed at $250.00.

On December 21, 1878, the United States Building Land and Loan Association filed its answer. It says, that the plain-

tiff was a member of the association and the owner and holder of six shares, when the transaction named took place, and was then a director of the association and was acting as such; that it is a corporation duly organized under ch. 54 of Code of W. Va. and the par value of each share of its capital stock is $150.00. It files with its answer a copy of its constitution and by-laws regularly adopted, when it went into operation. It denies, that it ever made any arrangement with plaintiff to make him a loan of money but says, that on July 18, 1876 he offered his six shares of stock for redemption as provided by the constitution and by-laws, and he offering twenty-eight per cent, the highest premium bid by any person offering shares for redemption, his shares were redeemed by the association at that rate; that he gave his note for it at the par value of these shares and received $634.50, the amount of said note less said premiums and one quarter's interest in advance, which he then paid to it, and it then paid him the full amount of the par value of his stock; that his bid was but a fraction higher than others. According to the constitution the complainant was to pay his dues of twenty-five cents a share weekly during the existence of the association, whether his stock was redeemed or not, and this was no part of the arrangement made at the time of this redemption of his stock; the deed of trust as appears on its face was made for the purpose of securing to the association the dues, interest, fines and other charges against him as a member of the association as well as the payment of this note. It was taken as additional security for the payment of the sums otherwise becoming due to the association; and when the dues, interest, fines and sums disbursed for insurance and taxes are paid, the association will make no claim on account of this note; that there are numerous stockholders in the association, many of whom have redeemed their stock in the same manner as the plaintiff; that under its constitution the only manner, in which the association can come to an end, is by redeeming all its stock; that the plaintiff has been dealt with, as all other members of the association, who have redeemed their stock, have been; that he has received the benefits of the premiums, which they have paid for redemption, as they shorten the time, that the association will continue, and the time, during

which he will have to make his payments, and thus lessens the amount he will have to pay ; that for this reason and because of our statute-law it is not true, that he has been loaned any money at usurious interest; that he paid his interest till January 18, 1877, but since that has paid nothing on account of interest ; that he paid his dues till July 10, 1877, amounting to $211,50, since which time he has paid nothing for dues; that there was due from him on October 18, 1877 for interest $40.50 and for dues $21.00 ; that from the 18th of January 1877, to October 16, 1877 he was fined under the constitution ten cents a week on each of his six shares in all $24.00 ; that there was on that day of dues, interest and fines coming to it from the plaintiff $85.50, when this association directed the trustee W. H. Caldwell to sell under the provision of the deed of trust to pay this indebtedness; that there has since by reason of the plaintiff's failing to pay anything been added to his indebtedness for dues, interest and fines up to December 17, 1878 $182.10, of which $36.60 was fines; that his whole indebtedness on December 17, 1878 was $267.60 ; that these will continue to increase till the close of the association estimated to be probably about November 1, 1881, if the views taken in this answer are correct, but if the plaintiff's views prevail, it will be much longer before the association closes.

The association positively denies, that its secretary combined with other members of the association to defraud the plaintiff and compel him by their by-bidding to pay a large premium for his redemption. The answer asks a dissolution of the injunction and a dismissal of the bill at plaintiff's costs. This answer is sworn to by the secretary of the company.

On March 1, 1879, the cause was heard on the bill and answer and motion to dissolve ; and the injunction was dissolved, and the bill dismissed on the last day of the term at the plaintiff's costs.

The following provisions in the constitution of the United States Building, Land and Loan Association filed with the answer are necessary to fully understand this case and the rights of the parties :

"ARTICLE I.

"SEC. 1. This association shall be called the United States

Building, Land and Loan Association of Wheeling. And its object shall be to purchase real estate, with or without improvements, and for the accumulation of a fund by which the members shall be enabled to build, or purchase houses and secure loans.

## "ARTICLE VI.

### "*Finance Committee and its Duties.*

"SEC. 1. The president shall appoint three of the directors in rotation, so arranged by the president, that one shall go off from the committee every month, whose duty it shall be to examine such real estate as the directory shall authorize the purchase of, or that may be offered as security for a loan thereon. They shall also, with the approval of the directory, make contracts for building houses on any property, the title of which is vested in the association, or for improving or repairing the same ; shall estimate the value of said real estate, when complete, and arrange payments on the purchase and sale of real estate, and shall have the superintendence of the general finances of the association.

## "ARTICLE VII.

### "*Solicitor and his Duties.*

"SEC. 1. There shall be selected by the directory a solicitor for the association, who shall make the necessary searches for ascertaining the title to all property offered to the association as mortgage-security, or for purchase, and give his opinion thereon ; and shall furnish to the finance committee a transcript of all property examined. He shall transact all other law business of this association whenever required, for which he shall receive a fair compensation.

## "ARTICLE VIII.

### " *Value of Shares.*

"The par value of every share in this association shall be $150.00. Members offering their shares for redemption to the association shall bid for the same when offered in meeting by the president, and the member willing to pay the highest premium shall receive the award of the money ; provided, however, that in no case the premium shall be less than ten per cent. or $15.00 per share.

"ARTICLE X.

"*Dues, &c.*

"SEC. 1. Every member shall pay an entrance fee of 25 cents on each share, and shall pay on every Tuesday, 25 cents on each share held by him, having the right, however, to pay his dues in advance.

"ARTICLE XII.

"*General Rules.*

"SEC. 1. Every member who is to receive money from the association shall secure the same, together with his weekly dues, interest, etc., to the association, by a good and sufficient deed of trust on real estate or lease-hold-property. Further, he shall pay all ground-rent, taxes, premiums of insurance and other charges on the property, and produce the necessary receipt therefor to the solicitor. Said security must be satisfactory to the directory.

"SEC. 2. In case a member neglects to give the required security (as above) within four weeks (counting from the day on which the money is awarded him), he shall be fined $1.00 on each share on the amount in the treasury for his use, and shall pay one month's interest on the amount awarded him, and the money shall again be subject to the order of the directory.

"SEC. 3. No shareholder shall be entitled to a loan on his share or shares until all arrearages are paid, and no property lying out of Ohio county shall be taken as security without the unanimous consent of the directory.

"SEC. 4. Should a person, who has purchased real estate from the association or contracted a loan from the same, neglect to pay up his legal dues, interest or fines, for a period of three months, the solicitor by order of the directory shall secure by legal process or otherwise the payment of the advanced money, as well as dues, interest and fines.

"ARTICLE XV.

"*Sale—Transfer.*

"Any member of the association may sell or transfer one or more of his shares to others. In such case the buyer and seller shall immediately notify the secretary thereof, and the

new member or buyer shall pay 50 cents for each share as a transfer fee. Transfers of shares otherwise than as herein specified shall not be deemed valid.

## " ARTICLE XVI.

### "*Insurance.*

" All policies of insurance on property secured to the association by deed of trust, must be transferred to the association, and ·must be renewed at least three days before their expiration. Neglect of the same shall be punished with a fine of $1.00. The secretary shall then attend to the renewal, and the delinquent must pay the extra charges,

## " ARTICLE XVII.

### "*Interest.*

" Any member to whom a loan is granted shall pay quarterly thereon, interest at the rate of six per cent. per annum from the date of the award, payable in advance.

## " ARTICLE XIX.

### " *Fines and Penalties.*

" Every member who fails to pay his weekly dues, interest, etc., shall be fined ten cents per week for every share held by him, and when the fines equal the money paid in on such share or shares, right and title to such share or shares shall be forfeited to the association. Every officer, whose duty it may be to be present, absenting himself without a reasonable excuse shall be fined fifty cents, and every officer having charge of necessary books or papers shall pay a fine of $1.00, if such books or papers are not produced at each weekly meeting. All members, who shall not appear at each yearly meeting, either in person or by proxy, shall be fined $1.00, unless he can give satisfactory evidence that it was impossible for him to attend ; then it shall be left to the decision of the directory whether he be fined or not.

## " ARTICLE XX.

" When every member shall have purchased, or had awarded to him $150.00 (as per articles 8 and 18) on each and every share held by him, and all debts and liabilities of the association are paid, then this association shall be dissolved, and not before.

" ARTICLE XXIII.

" This association is formed under and subject to the corporation laws of the State of West Virginia, especially sections 25, 26, 27, and 28 of chapter 54 of the Code of West Virginia, which are hereby made part of this constitution."

*Daniel Lamb* for appellant cited the following authorities: Code ch. 54, §§ 25, 26, 27, 29; 68 Pa. St. 67; 30 Pa. St. 465; Bright. Purd. Dig. 184; 2 L. R. Q. B. 153; 46 N. Y. 477; 3 Lans. 394; 60 Barb. 159; 20 Gratt. 253; 11 Leigh 556; 11 Gratt. 498; 14 W. Va. 783; Law R. 5, ch. app. 444; 3 Barb. 207; 7 Leigh 26; 2 Rand. 109; 62 N. Y. 346; 1 Johns. Chy. 536; 4 Hill 255; 1 Denio 133; Cool. Const. Lim. 394, 395; 9 How. (U. S.) 192; 24 How. (U. S.) 436; 21 Gratt. 614; 25 Ohio St. 208; 31 Ohio 517; 25 Ohio St. 186; 29 Ohio St. 252; 41 Md. 409; 75 N. C. 292; 30 Pa St. 465; 39 Pa. St. 137; 41 Pa. St. 478; 84 Pa. St. 211; 3 De G. M. & G. 1014; 29 N. J. Law 231; 33 Barb. 103; 69 E. C. L. Rep. 104 and note; 6 Hare 87; 1 De G. F. & J. 120; 1 De G. M. & G. 783; 3 De G. M. & G. 997; 22 Gratt. 233; 23 Gratt. 787; 36 Md. 394; 40 Md. 230; 41 Md. 418; 13 Gray 157; 15 Gray 130; 6 Allen 1; 7 Allen 100; 105 Mass. 246; 29 N. J. Law 225; 43 N. H. 194; 25 Barb. 263; 2 Cranch 168; 5 Ohio St. 59; 2 How. (U. S.) 442; 27 Pa. St. 339; 37 Wis. 655; 42 Md. 581; 5 Conn. 560; 68 Me. 43; 22 Gratt. 234.

*W. P. Hubbard* for appellee in addition to the authorities cited by him in *McGannon* v. *Central Building Association,* cited the following: Const. Art. XI, § 27; Code, ch. 133, § 4; High Inj. §§ 11, 35, 311; *Id.* § 37; *Id.* § 310.

GREEN, JUDGE, announced the opinion of the Court:

This suit was commenced by a bill being presented to the judge of the county court of Ohio in vacation asking an injunction to a sale by the trustee, which had been advertised, of a lot in Wheeling to secure the payment of a note by the complainant J. E. Parker executed to the defendant, The United States Building Land and Loan Association of Wheeling for the sum of $900.00, dated July 18, 1876 payable six years after its date with interest from date payable quarterly in ad-

vance and further to secure to said defendant the prompt payment of said interest on said note and of all dues, fines and other charges, with which said complainant might be assessed as a member of said association, and the repayment of all sums, which it might have to pay for taxes, insurance or other charges on the property conveyed. And it is recited in the deed of trust, that it was agreed, that the trustee might not only sell upon default in the payment of the principal of this note, when due, but upon default in the payment, when due, of any instalment of interest or upon default in the payment of any dues, fines or other charges, with which the complainant might be assessed as a member of this association, or upon his failure to keep the buildings therein conveyed insured, when the whole of the principal of said note should be considered due, and the trustee might sell. The bill alleges, that this note was given on the redemption of six shares of stock in the association, for which he received $624.75 at the time, when the note was given, and was a loan of that sum; that he had paid in weekly dues on this loan and otherwise about $226.50. Upon these allegations made in this rather vague manner the bill alleges that this money was lent at usurious interest; and it prays an injunction of the sale, and that said defendant might be required to render an account and discover on oath, what usurious interest has been paid on this loan, and that it may be applied to the principal and for further relief.

The judge of the county court in vacation granted an injunction as prayed for; and before any other action was taken in the county court, the cause was removed to the circuit court, when a full answer was filed by said defendant setting forth the facts fully, as stated in the statement of this cause, which precedes this opinion.

The first question raised in this cause by the counsel for the appellees is, that the county court had no jurisdiction. The counsel in his printed notes says: " The injunction in this cause (which was granted by the county court of Ohio county) was properly dissolved by the circuit court for the following reasons in addition to those which have been stated : Because of want of jurisdiction in the county court to award it. By section 27 of article VIII of the Constitu-

tion, the jurisdiction of the county court in equity cases might be limited by law, and even if power to enjoin is implied in a grant of equity jurisdiction, section 4 of chapter 133 of the Code of 1868 has taken away that power from the county courts." The counsel then adds a number of supposed defects on the face of the bill, which it is argued made it fatally defective on demurrer.

These positions of appellant's counsel are untenable. The act or provision creating the county court of Ohio county, chapter 21, Acts of 1872–3, in section 2 expressly provides, that it shall have jurisdiction in all suits in equity. This clearly gave it jurisdiction in a proper case to award an injunction; and this, it strikes me, is obviously not affected or controlled, as is argued, by section 4 of chaper 133 of our Code, page 631. This simply provides, that "jurisdiction of a bill of injunction to any act or proceeding, shall be in the circuit court of the county, in which the act or proceeding is to be done, is doing, or is apprehended." This act of 1868 it seems to me, obviously can have no effect on a jurisdiction of a county court conferred in 1863. For when this act of 1868 in the Code was passed there was no county court in existene; and the act simply meant to point out, in which of the circuit courts there should be authority and jurisdiction in injunction cases, such jurisdiction being as a matter of course confined then to the circuit courts, there being then no county courts.

Nor is there any soundness in the position of counsel, that the facts alleged in the bill were insufficient to justify the awarding of an injunction. It is true they are alleged rather vaguely, and some important facts brought into the case by the answer and not stated in the bill. But the bill does allege facts, which, as the law governing building associations is interpreted by this Court, show clearly, that the debt sought to be enforced under the deed of trust by the sale about to be made was tainted with usury. This abundantly appears from the abstract of the bill set out in the statement of the case preceding this opinion. And in such case the authority of a court of equity to enjoin the sale till the usury is purged is unquestionable. But as I understand the record, the appellee's counsel was laboring under a mistake, when he alleged, that

the injunction in this case was granted by the county court of Ohio county. The record shows, that it was granted by the judge of the county court of Ohio county in vacation. And while the county court of Ohio had I think clearly jurisdiction to award such injunction, it is equally clear, that the judge of the county court of Ohio county had no such authority or jurisdiction, as none such was conferred on him by statute-law.

But the case being in the county court, when it was removed to the circuit court, as the bill on its face showed a good ground for awarding an injunction as prayed for in it, the circuit court of Ohio county on the removal of the case ought to have done, what should have been done by the county court before the removal of the cause, and indeed as soon as the bill was filed, that is, award the injunction as prayed for in the bill, having first set aside the injunction-order made by the judge of the county court of Ohio county in vacation, as made by a judge, who had no authority to make such an order. The circuit court ought therefore to have awarded the injunction prayed for in the bill and have continued the same, till the case was heard and disposed of by the court on its merits, or until the injunction was dissolved on motion after the answer had been filed, if it was such as to justify the dissolution.

Upon the merits of the case the appellant's counsel insists that the injunction ought not to have been dissolved and the bill dismissed, as it was by the circuit court by its decree of March 1, 1879, because the contract made by the United States Building, Land and Loan Association of Wheeling with the appellant, John E. Parker, and the note and security taken of him were not authorized by law ; that they were *ultra vires* and could not therefore be enforced. In support of this it is argued, that the statute of our Code authorizing the formation of homestead and building associations authorized them to be formed for the purpose of raising money to be used among their members in buying lots or houses or in building and repairing houses and for no other purpose whatsoever ; that it differs from the Ohio statute in this important particular, that the Ohio statute after describing in this same language the use to be made of the money of such association adds the important words " or other purpose;"

that by section 27 of this act certain special privileges are conferred on *such* corporations, meaning those organized for the purpose above specified and none other; and that this is clearly shown by the 29th section of our act, which requires such corporations to insert in their constitutions these provisions of this act. It is insisted, that the first article of the constitution of this association declares *" its object shall be to purchase real estate* with or without improvements, and for the accumulation of a fund, by which its members shall be enabled to build or purchase houses or *secure loans."* And articles 6 and 7 of the constitution make provisions for executing the purpose of buying and selling real estate, which shows clearly, that this association was not a building association within the meaning of our act, and that therefore it cannot claim any of the special privileges conferred by this act such as the privilege of contracting for a premium for making a loan at legal rates of interest and an exemption, when it contracts for or takes such premium, from the operation of the usury-law. To sustain these views counsel refer to *Jarrett's ex'r v. Cope,* 68 Pa. 67 ; *Kupfert* v. *Guttenberg Building Association,* 30 Pa. 465 ; *Hornby* v. *Close,* Law R. 2 Q. B. 153 ; *People* v. *Nelson,* 3 Lansing 394, and same case in 60 Barb. 159 and in 46 N. Y. 477.

In the last named case a *mandamus* was asked to compel the secretary of state to issue a certificate or grant a charter to the Mutual Reliance Society under an act of the New York legislature "for the incorporation of benevolent, charitable, scientific and missionary societies." The articles signed and acknowledged by the requisite number of persons had been presented to the secretary of state; and in these articles it was stated, that " the object, for which the society was formed, was benevolent; " but some of the provisions of these articles showed, that it was in part formed for business-purposes, having in view pecuniary gain and profit to the corporators. It was very properly decided, that this association did not come within the objects, for which the secretary of state was to grant charters to corporations; and he properly refused to grant the same; and the court held, that he could not be enforced to do so. This case however by no means shows, that the appellant's counsel is right in his position. The secretary of state

in the case before us might very properly and ought to have refused to grant a charter to the United States Building, Land and Loan Association, if its articles set out, that its objects were those stated to be its objects in the first article of the association ; and if this association had endeavored to carry out these objects by buying and selling land and loaning money to its members for any other purposes than those specified in ch. 54, section 25, of our Code, it would as provided by the 26th section have forfeited all its rights and privileges, and upon a proper proceeding instituted by the State its charter would have been declared forfeited. But the secretary of state did not, as he might well have done, refuse to grant a charter to this association ; but on the contrary the record shows, that it was regularly " incorporated as a homestead and building association under said provisions of chapter 54 of the Code of West Virginia." And the State never did even institute proceedings to have its charter avoided, because it was doing a business not authorized by the law.

We have decided in the case of *John Pfeister* v. *The Wheeling Building Association, supra,* that the fact, that the association lent money to its members for other purposes than those named in this act, the "buying of lots and houses and the building or repairing of houses," did not so vitiate its charter as to prevent its enforcing the contract for the loan of the money entirely ; but it did make the contract to take a premium for such loan usurious; and the collection of such premium would not be allowed. In this case there is no allegation even, that the money loaned by the association to the appellant was used for any other than those legitimate purposes named in the act.

In the case of *Hornby* v. *Close*, 2 L. R. Q. B. 153, under an act authorizing justices to punish defaulting officers of friendly societies the president of the Budford Branch Society of the United Order of Boilermakers and Iron-ship-builders in the manner provided by the act sought by information before the justices the punishment of Charles Close a member of the association for withholding improperly certain moneys of the society in his hands. The justices dismissed the complaint and refused to hear it, because the society was not a friendly society within the act but was a society formed for an

illegal purpose. The Court of Queen's Bench affirmed this action of the justices holding, that this "society did not come within the operation of the friendly society act so as to give the magistrate jurisdiction." Blackburn, Judge, said: "A little deviation from the strict purpose of a friendly society might not take the society out of the scope of the act; but here a main object certainly, if not the main object, I think the main object, was a trades-union, and therefore the magistrates were fully justified in declining to act. Secondly, I go further, and think the rules of this society illegal in the sense of void according to the principles in *Hilton* v. *Eckersley*, 6 El. & Bl. 47, 66 (E. C. L. vol. 88), 24 L. J. Q. B. 353, 25 L. J. Q. B. 199, a case of combination by masters, but the same principle must apply to combinations of men. They are not enforceable by law."

In the case before us the constitution of the association shows clearly, that its main and principal objects, were those of a building association, and though they may have contemplated the connection with it of other business, yet it was evidently a mere secondary business, which might perhaps be done. There was no provision for carrying out this other business except the two vague clauses in reference to it in the articles we have referred to, while the main business of the association, that of a building association, is fully provided for in many articles in the constitution giving full details of the manner, in which it was to be conducted. And there is nothing in the record before us to show, that the association ever did engage in any other business than that properly belonging to a building association, though, we shall see, in transacting its legitimate business it to some extent violated the law. The English case presented a question so different in its form from that before us, that, it seems to me, it has little or no bearing on the subject before us.

In the case of *Jarrett's ex'r* v. *Cope, Treasurer*, in the articles of association, on which the charter was granted, the declared object of the association was, " the accumulation of a fund by the savings of its members to build or purchase for themselves dwelling houses or real estate or to enter into business, as they should deem most advisable." It was held, that a charter issued on these articles was not a building

association entitled to its privileges; and it could not therefore recover a premium agreed to be paid by a member on a loan being granted to him. It will be observed here, that this purpose foreign to that of a building association was not merely stated in the constitution of the association as in the case before us, but was also contained in the articles, on which the charter was granted, and was considered by the court as constituting a part of its charter. In the case before us the record shows, that the charter of the association was regularly issued under chapter 54 of our Code as a charter to a homestead and building association, and it is of course to be presumed, that the objects set forth in the articles was in strict accord with those required of homestead and building associations by our law. This case is therefore inapplicable to the case before us.

In the case of *Kupfert* v. *The Guttenberg Building Association*, 30 Pa. St. 465, the charter of the company was given in evidence, but the case fails to show what its provisions were. The court refused to give to this association the peculiar privileges of a building association. They say : " This company is not a building association at all. True, in the second article of its constitution it declares its objects to be to erect buildings; but this is mere sham, for all the rest of its constitution and by-laws show most distinctly, that its only purpose is to loan out its money. This is a new device and may require of the courts new and modified remedies to reach all the cases, that will arise under it." The whole case shows, that it was decided, not so much because its avowed object was to do other business besides that proper for a building association, but because the whole scheme was regarded as a device to evade the usury laws; and the court in that case says: " The courts have always been assiduous in ferreting out the devices of usurers in the violation of law." The case it seems to me throws no light on the enquiry before us.

The cases of *Straus* v. *The Eagle Insurance Company*, 5 Ohio St. 59—64 ; *Head* v. *Providence Insurance Company*, 2 Cranch 150 ; *Commonwealth* v. *Erie Railroad Company*, 27 Pa. 339 ; *Northwestern Packet Company* v. *Shaw*, 37 Wis. 655 (19 Am. R. 781) ; *Weckler* v. *First National Bank*, 42 Md. 581 (20 Am. R. 95, 100, 101) ; *New York Firemen In-*

*surance Company* v. *Ely.* 5 Conn. 560 ; *Franklin Company* v. *Lewiston Institution*, 68 Me. 43 (28 Am. R. 9) are cited by appellant's counsel to show, that if contracts made and securities taken by a corporation are not authorized by law, then they are *ultra vires* and cannot be enforced. These cases do show, that if in the transaction of business, which it has no authority by its charter to engage in, but which is so foreign to the objects of the incorporation, that it cannot be implied as within the powers of the corporation to transact, a corporation makes a contract, it cannot enforce such contract.

But the loaning of money by the United States Building, Land and Loan Association to the appellant, a member of the association, for the purpose of buying a lot or house or building or repairing a house was not business, in which this corporation was not authorized by its charter to engage, but was the very business, in which every homestead and building association is expressly authorized to engage ; and the record shows, that this association had a charter of a homestead and building association under chapter 54 of our Code and was therefore authorized to do this very business. If it took the note of the appellant for more than the amount, which under the law it was authorized to do, so that its loan became usurious, it will not prevent the enforcement of the loan to the extent, that it is legal, though the usury in the transaction must be stricken out, and the usurious interest must be abated as in a case, where usury is practiced by a natural person. This is held, in *Pfeister* v. *The Wheeling Building Association, supra.*

In that case it was also held, that though a building association was not allowed to lend money to its members except for the purposes specified in the act authorizing the charter of these corporations ; and though such an association was bound to see, that the money, which it loaned to its members, was applied to these legitimate purposes, yet if it were applied otherwise, while the taking of a premium for such a loan would be usurious, the loan would be enforced, the making of such loan not being *ultra vires.* And surely the insertion in the constitution of a building association of the purpose of using the money of the association for illegitimate purposes cannot operate more injuriously to a building association

than the actual and habitual use of its money for illegitimate purposes, though this purpose be not expressed in the constitution. And so I conclude, that though in the constitution of a building association there are inserted objects of the association, which are additions to those authorized by the law and by its charter, the insertion of such unauthorized provisions in its constitution would not prevent such an association being a building association, and when in the transaction of its legitimate business as such it makes a loan to one of its members for a legitimate purpose, it may enforce it and has with reference to such loan all the rights and privileges, which any other building association would have under our statute. Where a building association regularly chartered violates its charter by engaging in business not authorized or by using its funds in modes not authorized, it subjects itself to a forfeiture of all its privileges and franchises, and its charter may be annulled or forfeited on a proper proceeding by the State. But such forfeiture of its charter till so declared by a court in no manner affects its legal and legitimate business-transactions. And a clause in its constitution showing its purpose to use its funds improperly cannot have any greater effect than the habitual use of them for improper ends and purposes and cannot therefore vitiate a legal and legimate business-transaction prior to any judicial finding, that the charter has been vacated.

The counsel for the appellee, the United States Building, Land and Loan Association, insists, that the transaction set out in the statement of this case was a sale by John E. Parker, the appellant, of his six shares of stock to them for $634.50 in cash, which was paid to him; and that, which the deed of trust really secures, is the prompt payment of all the dues, fines and other charges, which might thereafter be assessed against him on these shares, and to keep the taxes paid on the property conveyed by the deed of trust and to keep this property insured, and further to pay promptly each quarter in advance the interest on his note of $900.00; and the payment of this note itself was not secured by the deed of trust, it not being really due to the Association but only taken as collateral security for these obligations really secured. The counsel also insists that this note was made payable at the time

when it was estimated, that the association would close; and that if he performed his obligations, the amount, which would be coming on these six shares, $900.00, would be just $900.00, the principal of these notes; or, if the transaction was to be regarded as a loan, then it was a loan of $900.00, for which he agreed to give for the precedence in taking the loan $265.50 in cash. They insist, that the $900.00 loaned must be re-regarded as paid him in cash, and the $265.50 this premium bid by him was at once repaid to the building association; that the association took from him for the amount loaned, $900.00, his note for that amount payable, when it was estimated the Association would close, with interest from date payable quarterly in advance, which was secured by the deed of trust and also by his six shares of stock as a pledge for the payment of this loan, and secured by the deed of trust the prompt payment of the dues, fines and charges on these six shares of stock pledged and also his obligation to pay the taxes and insurance on the property named in the deed of trust, which property was conveyed in trust to secure all these obligations. These views and claims which lead to the same result were set up in the answers of the United States Building, Land and Loan Association; and the court adopted them in its decree of March 1, 1879, dissolving the injunction and dismissing the bill at the costs of the plaintiff.

In *John Pfeister* v. *The Wheeling Building Association supra*, it was held, that just such a transaction is a loan made by the building association to the redeeming member; and in *John E. Parker and others* v. *United States Building, Land and Loan Association and others, infra*, it is held, that it is a loan of the money actually paid to the redeeming member, in this case a loan of $634.50, the interest on it payable quarterly in advance; and instead of the notes being taken weekly as collateral security to secure the payment of the dues, fines, charges, taxes and insurance it was taken for the loan itself with interest from date payable quarterly in advance, and the note being taken for the par value of the shares, $900.00, and interest being required to be paid on that sum, when only $634.50 was loaned, rendered the transaction usurious, and the note can be enforced only to the extent of $634.50, the money actually lent, with simple interest from the date of the

loan ; and that the shares redeemed remain in the hands of the United States Building, Land and Loan Association not, as the absolute owner of them but simply as collateral security for the payment of the amount of money so actually loaned, $634.50, and the interest thereon and also the payment, when the association closes, of the bonus or premium bid, $265.50 ; and that to make this collateral security of these six shares avail able, the United States Land and Loan Association legitimately by the deed of trust secured the prompt payment of all dues, fines and charges on these six shares, and also the taxes and insurance on the property conveyed.

Under these arrangements according to this their legal effect the amount due under the deed of trust will of course be the amount of dues and all legitimate fines and charges on these six shares and any taxes and insurance on the property conveyed, which the United States Building, Land and Loan Association may have had to pay, and all the unpaid interest on the money actually loaned, $634.50, charged at simple interest at the rate of six per cent. per annum less of course any interest, that has actually been paid by John E. Parker, the borrower.   The amount loaned to him, $634.50, was fixed at that exact sum so that it would be exactly satisfied including the premium of $265.50, when the amount calculated as above was paid at the close of the association by John E. Parker.

According to the answer of the United States Building, Land and Loan Association, John E. Parker paid the interest on this $900.00 note promptly, as required by the terms of the note, till January 18, 1877 ; and since then he has paid nothing on account of interest ; but he continued to pay his dues promptly, as required by the constitution, each week till July 10, 1877.   The United States Building, Land and Loan Association claiming, that under its constitution, which it claims, it had under the law a right to adopt, it can properly charge John E. Parker with fines of ten cents per week on each share from and after January 18, 1877, when he failed to pay his interest on this $900.00 note promptly.

We propose now to enquire, whether this is a legitimate demand.   Can a building association in this State legally inflict fines on a member, who has redeemed shares and thus bor-

rowed money of the association for the non-payment promptly of the interest on this loan? In Connecticut the statute of 1854 provided with reference to building associations, that "they should have power to lend money to their members, to receive interest for money so loaned monthly, quarterly, semi-annually or in advance; to receive for such loan in addition to the legal rate of interest, paid as aforesaid, such a bonus as the parties in each case may agree upon; and to loan money to persons not members of the association at legal rate of interest, provided no member of the association, who can furnish good and sufficient security therefor, applies for it." See 24 Conn. 154, in which case the Court say: "It is apparent from this provision, that the Legislature intended to authorize an association to receive a compensation in addition to the legal rate of interest for a loan of money made to one of their members. But did they intend to exonerate all contracts made with their members from the operation of the usury-law? We think not. Had they so intended, they would have used language more appropriate for such purpose. They naturally would have said, that such associations might loan money to their members at such rates of interest or upon such terms, as the parties might agree upon. This language would have been plain, intelligible and liable to no misconstruction. But they have simply authorized the receipt of a bonus for the loan in addition to the legal interest. By that expression, we think, they meant something definite; something distinct and independent of interest, in the ordinary acceptation of the term, a definite sum for a loan for a specified time, and not anything, which the parties in their contract might choose to denominate a bonus. Again the statute authorizes the receipt of the interest monthly, quarterly, semi-annually or in advance, but confers no authority to receive the bonus in that manner; implying, that the latter is to be paid in a different mode. It merely authorizes the receipt of a bonus in addition to interest, which might be received in a specified form. Had the Legislature intended to sanction the payment of the bonus in the manner, in which the interest might be received, why did they not say, that the association might receive the interest on the money loaned and the bonus agreed upon by parties monthly, quarterly, semi-

annually or in advance ?   But they have not said so, and as we think for a very good reason ; they did not intend to authorize contracts of so usurious a character as the one under consideration.   Their design was to benefit a class of borrowers, who might not be able to obtain loans in other modes."

The contract under consideration considered by the court as usurious was a loan by a building association to a member of $6,000.00, with interest and a bonus of three fourths of one per cent. per month, both interest and bonus payable monthly in advance.   The court after thus construing this law goes on to show, that this addition to the interest at the end of each month would differ from a certain fixed premium agreed on by the parties in this, that the extent of the bonus levied as one sum would be more readily seen and understood, than when thus distributed in small amounts payable monthly. So our statute authorizes a premium or bonus to be taken by a building association on a loan made to a member ; but this ought not to be held to authorize a weekly fine to be added to the interest, when it was not paid promptly, for this too is not likely to be much regarded in advance by a borrowing member, who cannot well estimate the large amount, which would be added to the legal interest, which he is paying, by these constant additions of fines each week, while he remains in default.

In the case of *Hagerman et al.* v. *Ohio Building and Savings Association et al.*, 25 Ohio 203, the court had under consideration the authority of a building association under their statute to inflict fines on members.   Their statute-law was given at length by this Court in the case of *Pfeister* v. *Wheeling Building Association, supra,* decided by this Court at the same time with this ; and it appears, that this statute is expressed in almost the same language as our law.   In determining the extent of the power of a building association to inflict fines on its members under that law the Court in that case say : "Nor is it within the power of the corporation to assess and collect a fine for a default in payment of interest upon loans advanced.   If the loan be advanced to a member he becomes bound to pay interest by his promise to do so, not because he is a member of the association, but because he is a borrower and as such promises to pay interest on the loan.

When money is thus advanced to a member, a new relation arises between him and the company—the relation of debtor and creditor, a relation not common to all the members or even necessary as between corporation and corporators. It is in the relation of debtor to a corporation and not as a member of it, that he promises to pay interest; but it is only as a *member* of the corporation and in relation to his conduct as such, that the power to impose a fine upon him exists."

This conclusion seems to be an inevitable result from the very words of our statute the 27th section of chapter 54 of the Code of West Virginia, page 411; and this language: "Every such corporation is authorized to levy, assess and collect from its *members* such sums of money by stated dues, fines, interest on loans advanced, and premiums bid by members for the right of precedence in taking loans, as the corporation by its by-laws may provide." The section concludes: "*Provided* that the dues, fines and premiums paid by members of such corporations, although paid in addition to the legal rate of interest on loans taken by them, shall not be construed to make the loans so taken usurious." Under this law, it does seem to me, by no device can a building association legally charge more than legal rates of interest in any other way than by adding thereto the premium, which the individual member has expressly agreed to by his bid. Could it be imagined, that by the constitution it might besides the premium under this law get more than legal interest by saying that a member who had borrowed money should pay an additional sum beyond members, who had not borrowed, as weekly dues? And why not, as they levy *dues* at their pleasure? Simply because these dues can only be levied on members as members of the association and not as borrowers. And for the same reason the association cannot levy a fine on a borrower of money, because he does not pay his interest promptly; for it cannot levy either dues or fines on any but members and as members. By no device should these associations be permitted to get anything from a borrower beyond what they get from other members except this premium and the legal interest on the money actually borrowed by him. This it seems to me is the clear meaning of our statute.

But even if they had a right to inflict a fine for the non-

payment of interest, they could not in the case before us inflict the fines, which the association claims; for, as we have seen, they had no right to demand interest on more than the amount actually loaned, $634.50, and when they demanded, as they did, interest on $900.00, the member had a right to refuse to pay it, and could not be fined for such refusal. See *Miller et als.* v. *Salisbury Building and Loan Association*, 75 N. C. 299. The court in the conclusion of that opinion say: " It is suggested, that the plaintiff ought not to have credit for the *fines* paid, because they were imposed for his default in not paying interest and dues. True they were so imposed; but then the interest and dues were unlawful, and they had no right to require him to pay them or to fine him for not doing an unlawful thing." But I do not base my conclusion, that no fines could be legally inflicted for the non-payment of interest in this case, on this narrow ground; for had the association demanded interest only on the $634.50 actually loaned, they could have legally inflicted no fine on the borrower for non-payment of the interest. They fine only members in their relation to the corporation as members.

In this case there was no allegation in the bill, that any portion of the money loaned was used for any but the legitimate purposes named in the statute; and it must therefore be conclusively presumed, that it was used only for this legitimate purpose; and it cannot now be questioned or disputed, that the money loaned was all used for such legitimate purposes.

We conclude therefore, that the claim set up in the answer of the United States Land and Loan Association of fines each week from and after January 18, 1877, when John E. Parker ceased to pay interest on his loan, cannot be allowed, and that these fines can only be legally claimed after July 10, 1877, when he ceased to pay his dues weekly on his six shares. After that time the association has a right to demand a fine once a week of ten cents on each of these six shares for his failure to pay his dues, that is, a fine of sixty cents a week after July 10, 1877. For in the case of *McGannon* v. *Central Building Association No. 2 and Cowden* decided by this court we held that a building association was entitled to fine a member once for each failure to pay his weekly dues,

provided the price was reasonable; and the fine inflicted by this association is reasonable.   The par value of the shares in this association, $150.00, the amount of the weekly dues, twenty-five cents a share, and the amount of the fine for the non-payment of these dues, ten cents on each, are all just the same as in the Central Building Association No. 2; and we decided for reasons set out in that case, that these fines were reasonable.   Nor, as is shown in that case, are these fines illegal, because by the constitution they are imposed for the non-payment of fines and interest without distinguishing them ?

The claim of John E. Parker, that he was not a member of this association, because he did not sign its constitution and by-laws, is not well founded.   He is clearly estopped from denying, that he is such member after acting for years as a member claiming and enjoying all the privileges of a member and acquiescing as such member in various provisions of the constitution of the association.

For the reasons assigned in *McGannon* v. *Central Building Association* we waive considering how a sale should be made under a deed of trust, such as was given in this case, prior to the close of the association, as this association is now closed.

The circuit court in its final decree in this cause adopted the erroneous views of the counsel for the association; and for the reasons which we have assigned, this decree of March 1, 1879, must be reversed, set aside and annulled; and the appellant must recover of the appellee, the United States Building, Land and Loan Association, his costs in this Court; and this Court proceeding to render such decree as the circuit court of Ohio county ought to have rendered, must set aside the order of injunction granted by the judge of the county court of Ohio county in vacation, and award an injunction as prayed for in the bill upon the giving of a bond in the penalty of $250.00 with good security, to be approved by the clerk of the circuit court of Ohio county, conditioned to pay all costs, which may be awarded against him, and all damages, which may be incurred in case said injunction be dissolved; and if the said bond is not given in ninety days from this date, the said cause shall be dismissed by the circuit court of Ohio county at his cost, but without prejudice to any suit, which he may be thereafter advised to bring; and this cause is re-

,manded to the circuit court of Ohio county to be further pro-
ceeded with according to the principles laid down in this opin-
ion and further according to the principles governing courts
of equity.

JUDGES JOHNSON AND HAYMOND CONCURRED.

DECREE REVERSED. CAUSE REMANDED.

## WHEELING.

Submitted June 7, 1880.   Decided May 6, 1882.